## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                                                                        No. 19-CR-02401

CORRINN ROBERTSON,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant Corrinn Robertson's Motion to Compel Discovery. Doc. 24. The government filed a response in opposition [Doc. 29] and Ms. Robertson filed a reply [Doc. 31]. Having considered the briefs, exhibits, relevant law, and being otherwise fully informed, the Court finds that the motion is not well-taken and will be **DENIED**.

## BACKGROUND

This case arose on August 1, 2019, when the government filed an information charging Ms. Robertson with two counts of Misprision of a Felony, in violation of 18 U.S.C. § 4. Doc. 1. The same day, Ms. Robertson waived indictment and pled guilty to the information pursuant to a Rule 11(c)(1)(B) plea agreement. Docs. 3, 4, 5. In the agreement, Ms. Robertson admits that she committed Misprision of a Felony on August 8, 2017, when she learned about the kidnapping resulting in the death of victim John Soyka, failed to notify an authority about the offense, and took several affirmative acts to conceal it. Doc. 4 at 4. Ms. Robertson also admits to committing a second count of Misprision of a Felony on August 8 and 9, 2017, when she learned about the kidnapping of another victim, Matthew Tressler, failed to notify an authority about that crime as well, and again took several affirmative acts to conceal it. *Id*.

On December 5, 2019, probation disclosed its Presentence Investigation Report. *See* Doc. 9. Ms. Robertson then filed her Sealed Sentencing Memorandum and Objections to the Presentence Report on February 7, 2020. Doc. 17. The same day, the government filed its Motion for Upward Variance and Sentencing Memorandum. Doc. 18. A week later, the government submitted a separate filing responding to Ms. Robertson's sentencing memorandum and objections. *See* Doc. 20. The Court set Ms. Robertson's sentencing for the morning of April 2, 2020. *See* Doc. 23.

Ms. Robertson then filed the instant Motion to Compel Discovery on March 13, 2020. *See* Doc. 24. In it, she asks the Court to order the government to disclose certain records under *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), *Kyles v. Whitley*, 514 U.S. 419, 437 (1995), and Rule 16 of the Federal Rules of Criminal Procedure. Doc. 24 at 1. Specifically, she requests the disclosure of:

> Any and all reports, recordings, memoranda, or other documents regarding any statements, debriefs, or meetings with two Government witnesses, Matthew Tressler and Mitchell Overhand… that contain reference to the above-named Defendant, Corrinn Robertson, her role in any conduct related to her instant charges, or other mention of her by name, or as Mitchell Overhand's girlfriend.

*Id*. Ms. Robertson explains that she was prompted to request these records by the government's sentencing filings, which she says attempt to "vilify [her] and grossly overstate her culpability in the instant offense." *Id*. at 3. She points, for example, to the government's statement in its Motion for Upward Variance that "her conduct when confronted with evidence of [the violence against Mr. Soyka and Mr. Tressler] reflects a callousness and moral bankruptcy that is unfathomable. Rather than call the police, or, even attempt to extricate herself from her associates, the speed and eagerness in which she joined the criminal conspiracy defies comprehension." *Id*. at 10 (quoting

Doc. 18 at 11). She further states that she has requested these specific items from the government on "at least three occasions" and has received no response. Doc. 24 at 3.

Ms. Robertson argues that she is entitled to the requested records because "[t]he very nature of the misprision charges make any information provided by Overhand or Tressler of Defendant's involvement in both incidents [] highly relevant and material to sentencing, particularly in light of the Government's [sentencing filings]." *Id*. at 9. She then asserts that the requested information "goes directly to rebut the Government's factual assertions" and that the statements requested from Mitchell Overhand would reflect that she was "for the most part, unaware of what happened to John Soyka." *Id*. at 10. Finally, on the last page of the motion, Ms. Robertson acknowledges the possibility that no such statements from Overhand and Tressler exist. *Id*. at 11.

The government makes several arguments in response. *See* Doc. 29. First, it asserts that Ms. Robertson's request for *Giglio* information is premature as well as moot because *Giglio* is a right triggered by witness testimony and because the government will not be calling either Mr. Tressler or Mr. Overhand at sentencing. *Id*. at 2. The government additionally argues that it has fully abided by its *Brady* obligations and will continue to do so. *Id*. at 3. For example, it represents that it has provided Ms. Robertson with several favorable statements made about her by both Mr. Overhand and Mr. Tressler, including statements Mr. Overhand made to the police that corroborate Ms. Robertson's claim that she was unaware of John Soyka's murder. *Id*. The government submits that it is not obligated to provide any additional statements because "*Brady* does not require the categorical production of any statement simply because a name is 'mentioned' or 'referenced.'" *Id*. at 2. It also argues that "discovery rules do not require the United States to respond to, or,

disabuse counsel as to [his] beliefs or suppositions about what the government has or has not done." *Id*. at 4.

In reply, Ms. Robertson represents that "[i]n a startling admission of its failure to respond to Defendant's repeated informal requests, on March 27, 2020, the Government produced a two-page [FBI report], which finally responded to Defendant's requests" as to Mr. Tressler.  Doc. 31 at 2.  Ms. Robertson still appears to be seeking information about any statements by Mr. Overhand, however, arguing that "since [she] was [Mr. Overhand's] girlfriend in the relevant time period, anything that [he] has said about [her] involvement or non-involvement in the case, is highly relevant to sentencing in this matter." *Id*. at 2.

## STANDARD

There is no general constitutional right to discovery in a criminal case.  *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977).  The government is obligated, however, to make the disclosures required by the Federal Rules of Criminal Procedure and by the Constitution's Due Process clause.  *See* Fed. R. Crim. P. 16.  In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87.  In the Tenth Circuit, to establish a *Brady* violation, a defendant must show: (1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant; and (3) the evidence was material to the defense.  *See Trammell v. McKune*, 485 F.3d 546, 551 (10th Cir. 2007).  Evidence is material under *Brady* if "there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Cone v. Bell*, 556 U.S. 449, 470 (2009).  Put another way, *Brady*'s materiality threshold is met if

the suppressed evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995).

The government's discovery obligations under *Brady* extend to sentencing. *See Bell*, 556 U.S. at 473–76 (remanding the case to the district court to consider whether the government's failure to disclose evidence violated the defendant's rights under *Brady* at the penalty phase). At the sentencing stage, the relevant question becomes whether there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the [sentencing] proceeding would have been different." *Id*. at 491 (Thomas, J., dissenting) (citations and internal quotations omitted).

Although it requires the disclosure of certain evidence, *Brady* "does not grant criminal defendants the right to embark on a 'broad or blind fishing expedition among documents possessed by the [g]overnment.'" *United States v. Mayes*, 917 F.2d 457, 461 (10th Cir. 1990) (citations omitted). That is because a defendant's "mere allegation that the requested information might be material does not entitle him to an unsupervised search of the government's files." *United States v. Lujan*, 530 F. Supp. 2d at 1224, 1231 (D.N.M. 2008) (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987)). In other words, "[t]he mere possibility that an item of undisclosed information *might* have helped the defense, or *might* have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109–10 (1976) (emphasis added), *overruled on other grounds by United States v. Bagley*, 473 U.S. 667 (1985).

In addition to *Brady*, the government must abide by the discovery obligations imposed by Rule 16 of the Federal Rules of Criminal Procedure. *See* Fed. R. Crim. P. 16. Rule 16 provides in pertinent part that "[u]pon defendant's request, the government must permit the defendant to inspect and to copy" certain items "within the government's possession, custody, or control" if "(i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-

in-chief at trial; or (iii) the item was obtained from or belongs to the defendant." Fed. R. Crim. P. 16(a)(1)(E).  The Supreme Court has explained that evidence "material to preparing the defense" refers specifically to arguments that respond "to the Government's case in chief" rather than any argument that might ultimately prevent a conviction.  *United States v. Armstrong*, 517 U.S. 456, 462 (1996).  Materiality under Rule 16 accordingly requires more than a showing that "the evidence in question bears some abstract logical relationship to the issues in the case." *See United States v. Burger*, 773 F. Supp. 1419, 1424 (D. Kan. 1991) (citation omitted).  Rather, "there must be some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in [her] favor." *Id.* (citation omitted); *see also United States v. Lloyd*, 992 F.2d 348, 350–51 (D.C. Cir. 1993).

Where a defendant requests undisclosed evidence from the government under Rule 16, she "must make a prima facie showing of materiality." *Lujan*, 530 F. Supp. 2d at 1234.  Moreover, "[n]either a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense." *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990).  While this burden is not a heavy one, "the defendant must make a specific request for the item together with an explanation of how it will be helpful to the defense." *United States v. Jordan,* 316 F.3d 1215, 1250 (11th Cir. 2003) (internal quotation marks omitted).

## DISCUSSION

The Court finds that Ms. Robertson has failed to demonstrate her entitlement to the requested records.  First, applying the Tenth Circuit's *Brady* framework, she has failed to show: (1) that the government suppressed the requested statements by Mr. Overhand and Mr. Tressler, because it is not clear that they exist (except for the FBI report the government disclosed to Ms.

Robertson on March 27); (2) that if the requested statements do exist, they would be favorable to her; and (3) that the statements, even if favorable, would be material to her defense at sentencing. *Trammell*, 485 F.3d at 551. As the government is correct to argue, *Brady* does not require the disclosure of any statements that simply mention Ms. Robertson by name. Doc. 29 at 2. Instead, to be "material" under *Brady*, the requested statements must create a "reasonable probability" of a different result at sentencing. *Bell*, 556 U.S. at 470. While Ms. Robertson asserts that the requested statements would corroborate her claim that she was unaware of Mr. Soyka's death and would rebut the government's characterization of her actions, her basis for that assertion is unclear given that she has never seen the statements in question and does not know whether they exist. And to the extent that the requested statements do exist and support Ms. Robertson's claims about her lack of knowledge of and involvement in the underlying crimes, it appears that the government has already provided other statements by Mr. Tressler and Mr. Overhand to that effect. *See* Doc. 29 at 3. The materiality of any additional statements is accordingly unclear. Finally, the Court agrees with the government that Ms. Robertson's request is moot under *Giglio* if neither Mr. Tressler nor Mr. Overhand will be testifying at her sentencing. *Id*. at 2 (citing *Giglio*, 405 U.S. at 150).

      Ms. Robertson's request fails under Rule 16 for similar reasons. She has failed to make a "prima facie showing" that the requested records will be material to her defense at sentencing, *see Lujan*, 540 F. Supp. 2d at 1234, and has not presented "facts that tend to show that the Government is in possession of information helpful to [her]." *Mandel*, 914 F.2d at 1219. Instead, Ms. Robertson has only provided "conclusory allegations of materiality." *Id*. By asking for every record in which Mr. Overhand or Mr. Tressler mentions her by name, regardless of the content of

7

those records, Ms. Robertson's request is also overbroad.  In sum, she has failed to make the threshold showing required to trigger court-ordered disclosure under Rule 16.

The Court nevertheless reminds the government of its continuing obligation to disclose favorable and material information to Ms. Robertson under *Brady* and Rule 16.  Because Ms. Robertson cannot know with certainty what information the government does and does not have, the government must construe her requests for discovery liberally and "resolve all doubts in favor of disclosure."  *United States v. Jackson*, 850 F. Supp. 1481, 1502 (D. Kan. 1994) (citing *United States v. Jensen*, 608 F.2d 1349, 1357 (10th Cir. 1979) and *United States v. Diggs*, 801 F. Supp. 441, 447 (D. Kan. 1992)).  The government should disclose, for example, any information that casts doubt on the extent to which Ms. Robertson knew the details of the offenses she helped conceal, as well as any information that cuts against its claim that she joined the criminal conspiracy with "speed and eagerness." Doc. 18 at 11.  Finally, the government should bear in mind that *Brady*'s materiality standard sweeps more broadly at the sentencing stage because the factors that go into determining a just and appropriate sentence are broader and more numerous than those that go into determining whether a defendant is legally guilty of the crimes charged. *See* 18 U.S.C. § 3553(a) (listing the factors courts are required to consider at sentencing); *Bell*, 556 U.S. at 470 (noting that *Brady* materiality is linked to the proceeding in question).

## CONCLUSION

For the foregoing reasons, Ms. Robertson's Motion to Compel Discovery [Doc. 24] is hereby **DENIED**.  The government is nevertheless instructed to continue to make any and all disclosures required by the Constitution's Due Process clause and by Rule 16 of the Federal Rules of Criminal Procedure.

Dated this 16th day of April, 2020.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE